AMERICAN SURETY CO. OF NEW YORK v. SANDBERG et ux.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1917. Rehearing Denied October 8, 1917.)

No. 2951.

1. INDEMNITY ⬙15(4) — VOLUNTARY SURETYSHIP — INDEMNIFICATION OF SURETY.

The fact that at the time of signing an agreement of indemnity the indemnitor was himself indemnified against loss does not affect the nature of his suretyship, or change its character from that of a voluntary act of accommodation.

2. HUSBAND AND WIFE ⬙268(6)—COMMUNITY PROPERTY—HUSBAND'S CONTRACT.

Where a husband, as a voluntary act of accommodation, signed an agreement to indemnify a surety company against loss by reason of its execution of a bond of a construction company to a paper company to secure performance of a contract of the construction company, the execu-

tion of the indemnity agreement resulting in no benefit to the community property of the husband and his wife, the indemnity liability incurred by the husband was not a charge against the community property.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action at law by the American Surety Company of New York, a corporation, against Peter Sandberg and Mathilda Sandberg, his wife. To review a judgment (225 Fed. 150) dismissing the action as to Mathilda Sandberg, plaintiff brings error. Decree affirmed.

The plaintiff in error brought an action against the defendants in error to recover $25,000, the amount of a judgment theretofore rendered against the defendant Peter Sandberg, on an agreement of indemnity which he executed on June 2, 1910, to indemnify the plaintiff against loss by reason of its executing as surety a certain bond of the Wells Construction Company, obligor, to the Powell River Paper Company, of Vancouver, B. C., obligee, to secure the performance of a certain contract between the parties last named, in the performance of which contract the construction company defaulted. The defendant Mathilda Sandberg appeared separately and answered the complaint in the present action, admitted that Peter Sandberg executed the indemnity agreement, and alleged that he executed it for the sole benefit and accommodation of the construction company, and not for the use, benefit, or profit of himself or of her, or of the community of the defendants, or for any purpose in which they were interested in any way, and that so far as she and the community were concerned, the same was without consideration. A jury trial was waived, and a judgment was rendered against Peter Sandberg for the full amount sued for, as his separate debt, the court holding that neither his codefendant nor the community real property of the defendants was affected by the lien of said judgment, and the action as to Mathilda Sandberg was dismissed.

The court made findings of fact, of which the following is the substance: That from the time of the marriage of the defendants to the present time they had used, owned, or possessed no property other than community property; that on June 20, 1910, there was no property in the possession of or under the control of Peter Sandberg which he then had, and none that he afterwards had, other than the community property and estate of himself and his codefendant and the income therefrom; that on the date when Peter signed the contract of indemnity, the construction company was engaged in constructing a building for the defendants herein, the contract price for which was $36,-500, on which the defendants had paid, prior to June 20, 1910, the sum of $36,383.05; that the building was then practically completed; that the payments so made were all in cash, and there was no connection in the relationship of the defendants and the construction company in the matter of the construction of said building and the signing of said indemnity agreement; that the construction company was then in good and substantial financial condition; that Mathilda Sandberg had no knowledge of the execution of the indemnity agreement by her husband until the institution of the present action; that on May 5, 1913, a judgment was obtained by the paper company against the construction company, and against the plaintiff herein as surety in the sum of $25,000, but Mathilda Sandberg had no knowledge or notice of the pendency of the action; that neither of the defendants was ever a stockholder of the construction company, and neither had any financial interest in that company, and Peter signed the indemnity agreement at the request and for the accommodation of one Mettler, who was a large stockholder and an officer of the construction company, and an old friend of Peter's; that on the same date the construction company, Mettler, and one Vergowe executed to Peter an indemnity agreement against liability on his part; that Peter Sandberg, without the knowledge or consent of Mathilda, from time to time signed certain notes and guaranties to banks in British Columbia, in addition to the indemnity agreement above referred to, and for the use and accommodation

of the construction company, Mettler, Vergowe, and Wells; that all such transactions except the building contract of the Kentucky building were matters and things which did not affect or concern the community of the defendants or the defendant Mathilda Sandberg, but were for the sole use, benefit, and accommodation of third persons; that the contract regarding the construction of the Kentucky building was made and practically carried out and completed prior to June 20, 1910, and was entirely disconnected with any of the other dealings of Peter Sandberg and the construction company.

William C. Bristol and Fenton E. Grigsby, both of Portland, Or., for plaintiff in error.

Bates, Peer & Peterson and Charles T. Peterson, all of Tacoma, Wash., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

GILBERT, Circuit Judge (after stating the facts as above).    [1] We find no ground to disturb the findings of fact of the court below. The fact that at the time of signing the agreement of indemnity Peter Sandberg was himself indemnified against loss does not affect the nature of his suretyship, or change its character from that of a voluntary act of accommodation for the benefit of the Construction Company.

The law of Washington (Remington's Codes and Statutes, §§ 5915, 5916) recognizes the separate property of husband and wife. In the case of the husband it is that which he owned before marriage and that which he acquired afterward by gift, bequest, devise, or descent, with the rents, issues, and profits thereof. In the case of the wife it is that which she owned at the time of the marriage or afterward acquired by gift, devise, or inheritance, with the rents, issues, and profits thereof. Section 5917 provides that:

"Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property, but the husband shall have the management and control of the community personal property, with a like power of disposition as he was of his separate personal property, except that he shall not devise by will more than one-half thereof."

Section 5918 provides that:

"The husband has the management and control of the community real property, but he shall not sell, convey, or incumber the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance."

The Supreme Court of Washington has held that any liability incurred by the husband in the prosecution of any business is prima facie a charge against the community, but that the presumption is overthrown by proof that the liability was not incurred in a business of which the community would have had the benefit if profit had been realized therefrom (McDonough v. Craig, 10 Wash. 239, 38 Pac. 1034); that a guaranty by the husband for the payment of goods to be furnished a corporation of which he is a stockholder, being merely a contract of suretyship, creates a separate and not a community debt (Spinning v. Allen, 10 Wash. 570, 39 Pac. 151), yet, if the husband is an officer and stockholder of the corporation and becomes surety to pro-

tect the property and business of the corporation, and if, under the circumstance, it is to be presumed that he is acting for the community and the benefits of his act might have belonged to the community, the property of the community will be held liable (Horton v. Donohoe Kelly Banking Co., 15 Wash. 399, 46 Pac. 409, 47 Pac. 435). Again, it is held that the execution of a note as an accommodation to a bank does not bind the community where neither the husband nor the wife had any interest in the bank. Shuey v. Holmes, 20 Wash. 13, 54 Pac. 540. But it is otherwise if it is to be presumed that a benefit growing out of the husband's connection with the bank will inure to the community. Shuey v. Holmes, 22 Wash. 193, 60 Pac. 402. So, in Way v. Lyric Theater Co., 79 Wash. 275, 140 Pac. 320, it was held that notes given by a corporation, and married men who were stockholders, for the purchase of an automobile to be used as a prize for the benefit of the corporate business, are presumptively for the benefit of the communities, but that the presumption might be rebutted by proof. In Threshing Machine Co. v. Wiley, 89 Wash. 301, 154 Pac. 437, where a husband signed a note as surety only, and received no consideration, it was held that the debt was not a community debt. Such being the law of Washington as construed by the highest court of the state, it is clear that the community property of the defendants is not bound for the payment of Peter Sandberg's debt to the plaintiff.

The plaintiff contends that Sandberg's execution of the indemnity agreement resulted in benefit to the community property in this, that the construction company thereby was enabled to obtain the contract with the paper company, and thus to make money to repay to Sandberg his advances on the Kentucky building contract. But the contention is not sustained by the facts. There is no evidence that such was the purpose of Sandberg's act, or that he expected or derived any benefit to the community therefrom, and the fact was, as found by the court below, that at the time when Sandberg signed the indemnity agreement, the Kentucky building was substantially completed and paid for, and the construction company was then in good financial standing.

It is contended that the judgment rendered in British Columbia on behalf of the paper company is conclusive upon the defendants herein, for the reason that they were notified and had an opportunity to defend that action. But such is not the record. Peter Sandberg had notice of the action, but Mrs. Sandberg had not, nor was she a party to the action, and the court below found that she had no knowledge of it.

[2] Upon the facts as found by the court below, and the law as it is established in the state of Washington, we find no error in the decree which is appealed from.

The decree is affirmed.