[No. 12276.   Department Two.   August 11, 1915.]

## C. M. WILLIAMS, *Appellant*, v. GEORGE C. HITCHCOCK *et al., Respondents.*[1]

RECEIVERS—RECEIVER'S BOND—LIABILITY OF SURETIES — ESTOPPEL. Sureties on a receiver's bond, who intrusted the bond to the receiver for the purpose of securing the signature of the wife of one of them before filing, and who failed to examine the record and repudiate their liability for failure to secure the signature, cannot be heard to say that creditors, not parties to the suit, for whose benefit the bond was given, should have examined the record so as to know that the bond was defective; and the sureties, as the one of two innocent parties who made the injury possible, must suffer the loss.

SAME.   A consent in open court to an order making permanent a temporary appointment of a receiver, upon which was based a finding, without exception, that the temporary bond was a good and sufficient bond to protect all parties concerned during the continuance of the receivership, followed by judgment accepting the bond accordingly, is a ratification of the bond and precludes the parties to the action from asserting, as against creditors, that it was invalid for want of the signature of one of the sureties.

HUSBAND AND WIFE — COMMUNITY PROPERTY—LIABILITY—SURETYSHIP.   A receiver's bond signed as surety by the husband as a plaintiff in an action to prevent the dissipation of the assets of a corporation, one-half of the stock of which was the community property of himself and wife, was given for the benefit of the community estate, and was therefore a community debt without execution of the bond by the wife.

COSTS—ON APPEAL.   Where appellants sought a community as well as a personal judgment against a married woman, and on appeal were awarded judgment against the community only, the respondent wife is entitled to recover her costs.

[1]Reported in 150 Pac. 1143.

Cross-appeals from a judgment of the superior court for Clallam county, Ralston, J., entered March 5, 1914, upon findings in favor of the defendants, in an action on a receiver's bond, tried to the court. Affirmed on defendants' appeal and reversed on plaintiff's appeal.

*Van Dyke & Thomas*, for appellant.

*Cochran & Plummer* and *James W. Redden*, for respondents.

ELLIS, J.—The plaintiff brought this action to recover from Hitchcock, as principal, and Peter and Thorp and the marital communities consisting of Peter and wife and Thorp and wife, as sureties, on a receiver's bond. The circumstances leading up to the receivership are as follows:

The defendants Peter and Thorp, prior to 1901, were partners engaged in an insurance, real estate and law business at Ballard. In May, 1901, they took one Jasperson as a third member of the partnership. He kept the books and acted as cashier. In 1905, the profits of the business having fallen off, Thorp withdrew from the firm, and Peter and Jasperson incorporated the business under the name of W. H. Peter & Company, with a capital stock of five hundred shares of a par value of one hundred dollars each. Peter owned one-half of the stock and Jasperson the other half. It appears that, sometime later, Peter and Thorp became satisfied that Jasperson, prior to the dissolution of the partnership, had appropriated a large part of the profits to his own use. Thereupon they brought an action in the superior court of King county against Jasperson and wife and certain of his relatives for an accounting. The corporation was made a party to that suit and, at the instance of Peter and Thorp, Hitchcock was appointed receiver of the corporation *pendente lite*. His bond as receiver was fixed at $5,000. He qualified as receiver and filed a bond, which, omitting caption and justification of sureties, reads as follows:

"Know all men by these presents: That George C. Hitch-cock, receiver of Peter & Co., a corporation and W. H. Peter and —— Peter his wife and F. S. Thorp and Eva J. Thorp, his wife, are held and firmly bound unto the defendants and the state of Washington in the sum of Five Thousand Dollars ($5,000) lawful money of the United States of America, to be paid to the said defendants and the state of Washington its successors and executors, administrators or assigns, for which payment well and truly to be made we bind ourselves our heirs, executors and administrators jointly severally and firmly by these presents. Sealed with our seals and dated the 28th day of February one thousand nine hundred and eight.

"The condition of the above obligation is such, that if the above bounden George C. Hitchcock as receiver of W. H. Peter & Co., a corporation shall well and faithfully perform the duties of his said office and perform all orders of the court concerning said receivership then the above obligation to be void; otherwise to remain in full force and virtue.

"In testimony whereof we have hereunto set our hands and seals this 28th day of February A. D. 1908.

"George C. Hitchcock  (Seal)
"W. H. Peter          (Seal)
"F. S. Thorp          (Seal)
"Eva J. Thorp         (Seal)"

The bond was filed February 29, 1908. On November 2, 1909, upon the final hearing in that action, the court held that the claims of Thorp and Peter against Jasperson, on account of matters arising in connection with the former partnership, were separate and distinct from the claims of Peter against Jasperson as an officer of the corporation, and therefore entered a decree dismissing Thorp as plaintiff because he had no interest in the corporation, and dismissing the claims of Peter so far as they related to the former partnership, but making the receivership permanent, and, with the consent of all the parties who had appeared in the action, adopted the original bond given by the receiver as his bond as permanent receiver.

During the progress of the receivership, the plaintiff in this action, C. M. Williams, and Charles F. Zeigler and B. F. Carpenter obtained three separate judgments against W. H. Peter & Company, a corporation, and against its receiver. These judgments were only partially paid, when the assets of the corporation were exhausted and the court found that the receiver had made improper use of funds sufficient to have paid these judgments in full. Thereafter Williams, for himself and as assignee of the Carpenter and Zeigler judgments, having first obtained leave in the receivership proceedings, brought this action to recover on the receiver's bond.

The case was tried to the court without a jury. The court made findings in favor of the plaintiff as against all of the defendants, except Amy V. Peter and the marital community composed of W. H. Peter and Amy V. Peter, and rendered judgment against W. H. Peter individually and F. S. Thorp and Eva J. Thorp individually, and against the marital community composed of Thorp and wife. Both parties appealed.

The defendants urge a reversal on the ground that the evidence shows that, at the time the receivership bond was signed by the defendants, Jasperson, the principal defendant in the suit in which the receiver was appointed, and the attorneys for all the other defendants except the corporation, W. H. Peter & Company, were present; that it was then agreed and understood that the bond was not to be delivered or filed until Amy V. Peter had also signed it as surety; that the bond was delivered to the receiver, Hitchcock, with that understanding, and that he, without securing the signature of Amy V. Peter, filed it as his bond as receiver, without the knowledge or consent of any of these defendants.

The plaintiff in his appeal urges that the court erred in refusing to enter a judgment against the community consisting of W. H. Peter and Amy V. Peter. We shall first address ourselves to the question raised by the defendants' ap-

peal. To avoid confusion, we shall designate the parties throughout as plaintiff and defendants.

I. The authorities are practically uniform that, where one signs a bond as surety upon condition that others are to sign it also, and it is delivered without his consent and without the additional signatures, it cannot be enforced against the person who signed, if the obligee had actual or implied notice of the condition, unless the condition be subsequently dispensed with by the one who signed. 1 Brandt, Suretyship & Guaranty (3d ed.), § 450; *Seattle v. Griffith Realty & Banking Co.*, 28 Wash. 605, 68 Pac. 1036; *Seattle National Bank v. Becker*, 74 Wash. 431, 133 Pac. 613; *Young v. Smith*, 14 Wash. 565, 45 Pac. 45; *Pawling v. United States*, 4 Cranch 218.

It is also generally held that the fact that the names of other persons than of those who sign are found in the body of the bond shows *prima facie* that the contract is not complete, and is hence sufficient to put the obligee upon inquiry and charge him with notice that those who signed may have done so only on condition that the other parties named therein would also sign it, thus opening the door to extrinsic evidence of that fact. 1 Brandt, Suretyship & Guaranty (3d ed.), § 461; *Young v. Union Sav. Bank & Trust Co.*, 23 Wash. 360, 63 Pac. 247; *Sharp v. United States*, 4 Watts (Pa.) 21, 28 Am. Dec. 676, and note, p. 679.

Some of the foregoing authorities, and many others which might be cited, hold that, when a bond containing in its body names of others than the signers is delivered to the principal named therein, with the understanding that he is to secure the signatures of such others as additional sureties before delivery, the delivery to him is in escrow; that if he deliver the bond without securing the other signatures, his delivery is void as to those who actually signed as sureties on that condition, and that these can defeat all liability on the bond by proof of the facts.

While the foregoing principles are too well established as general rules to be open to question as between the sureties and the obligee, it will be noted that they have usually been invoked against an obligee who in the nature of the case would be expected to see the bond when it was delivered, and would hence be charged with notice of its condition. It seems to us hardly consonant with justice to apply these rules to bonds given for the protection of persons not parties to the litigation at the time the bond was given, as is the case here touching the creditors of the corporation, whose rights would be left wholly unprotected because of defects in a bond which, under the circumstances, they could hardly be expected to examine until the necessity to resort to it for protection had become imminent. Peter and Thorp themselves procured the appointment of the receiver primarily for their own benefit. They and Mrs. Thorp signed the bond and delivered it to the receiver, trusting him to secure the signature of Mrs. Peter before filing it, thus making injury to someone possible. They should be the ones to suffer the consequences of the receiver's breach of their confidence rather than visit it on the heads of creditors of the corporation who reposed no such confidence. It would seem to be a case for the application of the rule that, where one of two innocent persons must suffer, he who made the injury possible should suffer it. The filing of the bond in its incomplete condition as a part of the record in the receivership proceeding is the only thing which could be held as charging the creditors with notice. But surely Peter and Thorp, who were parties to the suit when the bond was filed and at whose instance the receiver was appointed, ought, first of all, to be charged with knowledge of the record which, by their own neglect, they suffered to be made. Not having examined the record themselves and repudiated their liability, but having permitted the court to accept the bond as their bond and on its faith to put the receiver in possession of the assets of the corporation, they should not now be heard to say that

the creditors, not then parties to the suit, should have examined the record so as to know that the bond was defective.

While we have found no case exactly parallel with that here presented, the principle which we think should apply is recognized in *Richardson v. People's Nat. Bank*, 57 Ohio St. 299, 48 N. E. 1100. It was there held that, in order for a surety to escape liability on a replevin bond on the ground of conditional delivery, it is not enough to show notice of the condition in the sheriff, to whom the bond was delivered, but that the defendant in the replevin must also be shown to have had notice. The court (opinion p. 314) said:

"It is too well settled to be questioned, that a surety on a bond of any kind cannot defeat his liability thereon by showing that it was delivered in violation of agreements between himself and the principal, or any other co-maker, unknown to the party for whose benefit it was given. It will be sufficient to cite some of the numerous cases on this point: *Bigelow v. Comegys*, 5 Ohio St. 256; *Harrison v. Wilkin*, 69 N. Y. 412; *Dangler v. Baker*, 35 Ohio St. 673; *Taylor County v. King*, 73 Iowa 153; *Smith v. Peoria County*, 59 Ill. 412; *Deardorff v. Foresman*, 24 Ind. 481; *McCormick v. Bay City*, 23 Mich. 457; *State v. Peck*, 53 Maine 284. In *Bigelow v. Comegys*, the decision is placed on what is termed the settled rule, 'that where one of the two persons must suffer a loss by fraud or misconduct of a third person, he who first reposes the confidence, or commits the first oversight, must bear the loss.' "

In *Smith v. Peoria County*, 59 Ill. 412, cited by the Ohio court, the bond, like that here, contained the name of another as surety whose signature it was agreed between the surety who signed, and the principal to whom the bond was entrusted, that the principal should secure the other's signature before delivery. The principal delivered it without securing the additional signature. The court, after stating the principle that the one reposing confidence should suffer the loss, said:

"There is no actual negligence imputable to the obligee, and there is none other than the technical neglect of not as-

certaining the extent of the actual authority of a special agent. And as we hold, the duty of so doing did not exist, in this case the obligee is not chargeable with even such neglect. We regard the case as one where the surety must run the risk of the fraud of his own agent. We deem it the duty of the signer of an instrument, under such circumstances, to see to it that the authority he has so delegated is not abused, and that it is not just nor reasonable to allow him to take advantage of its abuse to defeat his obligation."

The reasoning of the Illinois court seems to us unanswerable. But we are not required to go that far in order to sustain the liability of the sureties on the bond before us. If it is not negligence for the obligee, as a participant in the *res gestae*, to fail to examine the bond for signs of a secret agreement and then inquire, *a fortiori* a creditor not then a party to the proceedings cannot be charged with negligence for failing to so examine and inquire.

Following the general rule, we would be inclined to hold that Jasperson, who was a party to the suit when the bond was filed, should be charged with notice of its contents and put upon inquiry. There is also evidence tending to show that he had actual notice of the agreement. Jasperson, however, was not the only obligee. The bond ran to the state of Washington and was intended to protect all creditors of the corporation as well as the defendants in the original action. These creditors could hardly be expected to examine the bond, and they cannot be charged with Jasperson's negligence in failing to do so.

But there is another and a stronger reason why the defendants here cannot now question this bond. When the receivership was made permanent, the court found:

"That the gist of the action of the plaintiff W. H. Peter, as regards the relations of the said Jasperson to said corporation, is for such accounting and the appointment of a receiver of the said corporation for the purpose of collecting its assets, operating its business and the winding up of the affairs of the said corporation, if the court should so direct.

"That after the commencement of this action, to-wit, on the .... day of .........., by the consent in open court through their respective counsel of all parties to the action who have appeared herein, a receiver, to-wit, George C. Hitchcock, was appointed by this court to take charge of the affairs of said corporation pending the final hearing herein, and that said receiver thereupon qualified as such by taking the oath required by law and filing a bond as directed by the court, and that he has ever since conducted the affairs of said corporation and is still in charge of the same as such receiver. ,

"That all of the parties to this action who have appeared herein do now consent in open court by their respective counsel that the appointment of said receiver be made permanent."

Among the conclusions entered on the foregoing findings is the following:

"That the bond heretofore furnished by the said George C. Hitchcock as such receiver is a good and sufficient bond and ample to protect the interests of all parties concerned during the further continuance of his receivership, and that all of the parties to this action who have appeared so agree in open court by their respective counsel."

These findings and this conclusion were not excepted to so far as the record shows, and no appeal was taken from the decree founded thereon. The decree itself recites:

"That the said George C. Hitchcock is a proper and suitable person to act as a permanent receiver of said corporation under the further orders and directions of the court, and that he is hereby appointed such receiver and that his bond heretofore given as temporary receiver be and the same is hereby regarded and accepted by the court as his bond as such receiver."

The findings and decree show that both Thorp and Peter were then present in court and represented by counsel. Whatever may be said as to their prior right to dispute liability on the bond because it was agreed when it was originally given that they should not be bound unless Mrs. Peter also sign it, they must now be held to have ratified it as their valid bond by their failure to object to the findings, conclu-

sion and decree above quoted. Being then present and represented in the proceedings, they cannot be heard to say that they did not know that the court was acting upon and adopting this bond as a valid bond. If they did not intend to be bound by it, it was their duty then to have examined it and raised the objection which they now urge. It is true that Thorp was dismissed from that action by the same decree, on the ground that his right of action was against Jasperson alone and not against the corporation. He is, however, as conclusively charged with notice of the fact that this decree recognized as his valid obligation the bond which he had signed, as he is with notice of the further provision of the decree dismissing him from the action.

We hold that the bond is a valid obligation of Thorp and wife and W. H. Peter, who signed it. So far as the defendants' appeal is concerned, the judgment must be affirmed.

II. The plaintiff's appeal also raises but a single question, namely, that the court erred in refusing to enter a judgment against the marital community consisting of W. H. Peter and wife and in awarding Amy V. Peter judgment for her costs.

Peter and Thorp brought the action in which the receiver was appointed, to secure an accounting from Jasperson and to enforce the payment of whatever amount might be found due from him. They procured the appointment of the receiver in order to prevent the dissipation of the assets of the corporation. Peter owned one-half of the capital stock of that corporation. This was admittedly community property of himself and wife. Every benefit intended to result from that action and from the receivership would of necessity accrue to the two communities as such—Peter and wife—Thorp and wife. The giving of the receiver's bond was an essential prerequisite to consummate any of the purposes for which the receiver was appointed. The obligation which Peter assumed as surety on the receiver's bond was an

18—86 wash.

obligation incurred by him for the protection of community property and must, therefore, be held an obligation incurred on behalf of the community.

In *McDonough v. Craig*, 10 Wash. 239, 38 Pac. 1034, this court held that:

"Any liability incurred by the husband in the prosecution of any business is *prima facie* a charge against the community; and that the presumption to that effect will continue in force until it is overthrown by proof that such liability was not incurred in any business of which the community would have had the benefit, if profit had been realized therefrom."

See, also, *Oregon Imp. Co. v. Sagmeister*, 4 Wash. 710, 30 Pac. 1058, 19 L. R. A. 233; *Horton v. Donohue-Kelly Banking Co.*, 15 Wash. 399, 46 Pac. 409, 47 Pac. 435; *Shuey v. Holmes*, 22 Wash. 193, 60 Pac. 402; *Allen v. Chambers*, 22 Wash. 304, 60 Pac. 1128; *Shuey v. Adair*, 24 Wash. 378, 64 Pac. 536; *Anderson v. Harper*, 30 Wash. 378, 70 Pac. 965; *Floding v. Denholm*, 40 Wash. 463, 82 Pac. 738; *McGregor v. Johnson*, 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022; *Peacock v. Ratliff*, 62 Wash. 653, 114 Pac. 507; *Woste v. Rugge*, 68 Wash. 90, 122 Pac. 988; *Bird v. Steele*, 74 Wash. 68, 132 Pac. 724.

We hold that the plaintiff is entitled to a judgment not only against Thorp and wife and Peter personally, and against the community consisting of Thorp and wife, but also against the community consisting of Peter and wife. The court, however, committed no error in allowing Mrs. Peter her costs. Since the plaintiff undertook to hold her personally and not merely as a member of the community, she was compelled to appear and defend in order to prevent a judgment which would bind her separate estate.

The cause is remanded with direction to modify the judgment in accordance with this opinion. The plaintiff will recover his costs in this court.

MORRIS, C. J., FULLERTON, MAIN, and CROW, JJ., concur.